**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

vs.                                                       Case No. 8:18-CR-328-T-23-AEP

**WEIMAR VALENCIA CAMPAZ**
_____/

**SENTENCING MEMORANDUM**

## I.   Legal Framework for Sentencing Analysis

It is now well established that sentencing requires a two-step process. First, the district court must correctly calculate the sentencing guideline range. Second, the district court must consider the factors outlined in 18 U.S.C. §3553(a) to determine a reasonable sentence as to each defendant in each case.

In <u>United States v. Talley</u>, 431 F.3d 784, 786 (11th Cir. 2005), the Eleventh Circuit enumerated the ten factors used to determine a reasonable sentence: (1) the nature and circumstances of the offense and the defendant's personal history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide a just punishment; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with appropriate educational training, vocational training, or medical care; (6) types of sentences

available; (7) the correctly-calculated sentence range under the Sentencing Guidelines; (8) pertinent policy statements of the U.S. Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

## II. Analysis of 18 U.S.C. § 3553(a) Factors

### A. History and Characteristics of the Defendant

Weimar Valencia-Campaz is a 28-year-old citizen of Colombia.[1] All his life, he has suffered austere poverty.[2] He was raised in the town of Punta Bonita, Department of Valle De Cauca, Republic of Colombia.[3] Punta Bonita is a small fishing village on Colombia's Pacific Coast that is located approximately 2 hours by commuter boat from Colombia's large port city of Buenaventura.[4]

Mr. Valencia-Campaz is an Afro-Colombian.[5] Spain first brought African slaves to Colombia in the sixteenth century to work on plantations and in mines.[6] Today, Afro-Colombians make up approximately 10% of the

---

[1] PSR, page 3
[2] October 8, 2018 interview of Weimar Valencia-Campaz.
[3] Id.
[4] Laura Burroughs, *Piangua is Life*, November 5, 2018, https://securefisheries.org/blog/piangua-life.
[5] PSR, page 3
[6] Minority Rights, *Colombia – Afro-Colombian*, webpage: http://minorityrights.org/minorities/afro-colombians/

2

population of Colombia.[7] Colombian municipalities with high populations of Afro-Colombians do not have sufficient government resources to provide basic services to their communities; 60% of Afro-Colombians do not have access to basic health care services and 57% of all babies born to Afro-Colombian mothers are premature.[8]

Mr. Valencia-Campaz's parents were never married, and they separated when Mr. Valencia-Campaz was a young child.[9] Mr. Valencia-Campaz never developed a relationship with his father.[10]

The home in which Mr. Valencia-Campaz grew up was in a wooden structure that had no indoor plumbing or electricity.[11] Because there was no fresh water source nearby, the family subsisted on rainwater.[12] When the dry season came to Punta Bonita, Mr. Valencia-Campaz was obligated to travel 2 hours in order to obtain potable water for his family.[13]

During Mr. Valencia-Campaz's childhood, food was scarce for him and

---

[7] United States Central Intelligence Agency, World Fact Book, Colombia, webpage: https://www.cia.gov/library/publications/the-world-factbook/geos/co.html
[8] Minority Rights, *Colombia – Afro-Colombian*, webpage: http://minorityrights.org/minorities/afro-colombians/
[9] PSR, Page 7
[10] Id.
[11] October 8, 2018 interview of Weimar Valencia-Campaz.
[12] Id.
[13] Id.

3

his family.[14] The family ate fish and shellfish regularly, but very little meat.[15] Mr. Valencia-Campaz's mother supported her children by collecting and then selling a mollusk called *piangua* from nearby mangroves.[16] In Punta Bonita, *piangua* collecting makes up the majority of the village economy.[17] When the work was available, Mr. Valencia-Campaz's mother also worked as a day laborer on farms harvesting rice, corn, yucca, and potatoes.[18]

Mr. Valencia-Campaz was the oldest child in his family, and he acted as a surrogate father figure for his 3 siblings.[19] After completing the 8th grade, Mr. Valencia-Campaz left school in order to find work and help financially support his mother and siblings.[20] Since he was an adolescent, Mr. Valencia-Campaz has worked as a mariner fishing for mahi-mahi, snapper, marlin, and tuna.[21]

Mr. Valencia-Campaz has two children, a one-year-old girl and a two-

---

[14] Id.
[15] Id.
[16] Id.
[17] Robert Mazurek, *A Window Into A Colombian Fishing Community At Risk*, November 5, 2018, https://securefisheries.org/blog/window-colombian-fishing-community-risk
[18] October 8, 2018 interview of Weimar Valencia-Campaz.
[19] PSR, Page 7
[20] October 8, 2018 interview of Weimar Valencia-Campaz.
[21] Id.

4

year-old girl from two different relationships.[22] Before his arrest he was involved in raising both girls both emotionally and financially.[23]

### B. The Correctly-Calculated Sentence Range Under The Sentencing Guidelines

The PSR calculates Mr. Valencia-Campaz's advisory guideline range to be an offense level 33, Criminal History I.[24] This Guideline range carries a recommended sentence of 135 to 168 months imprisonment.[25] On October 23, 2018, the Government filed a Motion For Downward Departure based on Mr. Valencia-Campaz's substantial assistance.[26] If the Court were to grant that motion, Mr. Valencia-Campaz's advisory guideline range would drop to an offense level 31, Criminal History I. This Guideline range carries a recommended sentence of 108 to 135 months imprisonment.[27]

Count One carries a minimum mandatory sentence of ten years imprisonment with a maximum of life imprisonment.[28] However, because the Government has filed a motion to recognize Mr. Valencia-Campaz's substantial assistance pursuant to USSG 5K1.1 and 18 U.S.C. 3553(e), the

---

[22] PSR, Page 8
[23] October 8, 2018 interview of Weimar Valencia-Campaz.
[24] PSR, page 9
[25] Id.
[26] See Docket # 67.
[27] USSG Sentencing Table
[28] 46 U.S.C. §§70503(a), and 70506(a) and (b); 21 U.S.C. §960(b)(1)(B)(ii).

District Court has the authority to impose a sentence below the minimum mandatory.

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

Mr. Valencia-Campaz is not a danger to reoffend. He is a simple, poor mariner from a tiny Colombian fishing village who was seduced by the temptation of financial security. Mr. Valencia-Campaz has no prior criminal history.[29] The United States Sentencing Commission has noted that first time offenders such as Mr. Valencia-Campaz are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.[30]

Mr. Valencia-Campaz is well aware that when he agreed participate in this smuggling venture that he made the biggest mistake in his life. The results of that decision have been disastrous for him; he has been plucked from his native country, stripped of all that is familiar to him, and separated indefinitely from his family.

Perhaps most stinging to Mr. Valencia-Campaz, he has lost the ability to support his daughters both financially and emotionally. Given the great privation he experienced as a child, Mr. Valencia-Campaz knows the

---

[29] PSR, page 7
[30] *Recidivism and the First Offender*, United States Sentencing Commission, May 2004

hardship his daughters are likely to endure in the coming years.[31]

When the Bureau of Prisons does eventually release Mr. Valencia-Campaz, he will undoubtedly steer clear of any contact with drug shipments for the remainder of his life.

**IV. Conclusion**

The Defense respectfully requests this Court take all the forgoing factors into consideration when it imposes sentence.

Defense Counsel moves for a sentence of 97 months of incarceration. This motion is based upon a two level departure in guideline level pursuant to the Governments USSG §5K1.1 motion, and an additional one level variance in guideline level based on Mr. Valencia-Campaz's history and characteristics.

Respectfully, a sentence of 97 months would be "sufficient but not greater than necessary to comply with" the goals of sentencing set forth in 18 U.S.C. § 3553(a).

---

[31] Studies in the United States have shown that among children of incarcerated fathers, there are higher rates of homelessness, poor developmental outcomes, and greater family instability. *See*: When A Parent Goes To Prison, A Child Also Pays A Price; National Public Radio, June 8, 2014.

**Certificate of Service**

I HEREBY CERTIFY that on November 5, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mr. Nicholas G. Derenzo, SAUSA
Office of the United States Attorney
400 North Tampa Street, Suite 3200
Tampa. FL 33602

/s/ *David C. Hardy*
David C. Hardy, Attorney at Law
Florida Bar #689661
1710 N. 19th Street, Suite 215
Tampa, Florida 33605
Tel: (813) 990-9547
dch@thehardylawfirm.com